Filed 5/9/23 P. v. Villalobos CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078380 |
| v. | (Super.Ct.No. INF1701501) |
| HILARIO VILLALOBOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Charles J. Koosed, Judge. Affirmed with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Hilario Villalobos of committing numerous sex offenses against his minor nephew. On appeal, Villalobos contends that the trial court erred by not instructing the jury on child sexual abuse accommodation syndrome and that defense counsel provided ineffective assistance by not objecting to an amendment to the information after the prosecution rested. He also argues that there are errors in the sentencing minute order and the abstract of judgment. We correct those clerical errors, but we otherwise affirm.

## BACKGROUND

John Doe was born in January 2003. Villalobos was born in December 1976 and is Doe's great-uncle. Doe met Villalobos in 2014. Villalobos lived with Mary B. Doe visited Villalobos on weekends.

In January 2018, Villalobos was charged by information with (1) two counts of aggravated sexual assault by means of forcible oral copulation with a child under 14 years old (Pen. Code, § 269, subd. (a)(4), counts 1 & 4); (2) three counts of aggravated sexual assault by means of sodomy with a child under 14 years old (Pen. Code, § 269, subd. (a)(3), counts 2, 5, & 7); (3) two counts of aggravated sexual assault by means of sexual penetration with a child under 14 years old (Pen. Code, § 269, subd. (a)(5), counts 3 & 6); and (4) one count of making criminal threats (Pen. Code, § 422, count 8). (Unlabeled statutory references are to the Penal Code.) Count 7 was amended after the prosecution's case-in-chief to allege one count of sodomy by force on a minor 14 years old or older. (§ 286, subd. (c)(2)(C) (section 286(c)(2)(C).)

2

Doe testified at trial, when he was 18 years old. Sometime around July 2015, Doe spent the night at Mary's and was going to sleep in the same bed as Villalobos. When Doe got into the bed, Villalobos started touching him. Villalobos pulled down Doe's underwear, touched Doe's penis, and rubbed Doe's penis up and down. Doe described the incident in detail.

One week later, Villalobos told Doe that he "couldn't say anything because something would happen." Villalobos did not explain what he meant, but the threat caused Doe to be fearful.

Doe did not tell anyone about the incident because he feared that adults would not believe him. Doe did not go to Mary's house to visit Villalobos again.

In mid-2016, Doe, his mother, and his stepfather moved into a two-bedroom apartment in the city where Villalobos lived. Two months later, in October or November 2016, Villalobos moved into the apartment with Doe's family. Villalobos spent his first night at the apartment in Doe's twin bed with Doe. Villalobos touched and sucked Doe's penis, licked and sucked Doe's buttocks, and ejaculated. Doe described the incident in detail. Doe did not tell anyone about what had happened because he was afraid that Villalobos "would do something to" him.

Two days after Villalobos moved in, Villalobos and Doe switched bedrooms and had separate beds. Villalobos continued to touch and to suck Doe's penis approximately three to four times per week. Villalobos also inserted his finger into Doe's anus, made Doe touch his penis, and put his penis in Doe's mouth.

3

After living with Doe's family for two months, Villalobos attempted to penetrate Doe's anus with his penis. Villalobos thereafter penetrated or attempted to penetrate Doe's anus with the tip or the head of his erect penis about once per week. Doe also testified that Villalobos did not "get his penis inside of [Doe's] butt." Doe explained: "He was never successful. Just the tip."

Doe testified that the other sexual behavior continued at a rate of three to four times per week throughout the period that Villalobos and Doe shared a room. Doe's attempts to push Villalobos away or to get away from Villalobos were mostly unsuccessful, because Villalobos would push Doe down, overpower Doe, and force Doe to submit.

In late July 2017, when Doe was a freshman in high school, Doe told a school therapist that he felt unsafe at home and was suicidal. Doe told the therapist that he was keeping a secret that involved a person in his family.

A law enforcement officer arrived at Doe's residence later that day and took Doe and his mother to the police station. Two officers interviewed Doe. Doe disclosed that Villalobos had sexually abused him. Doe told the officers that among other things Villalobos had penetrated Doe's anus with the tip of his erect penis approximately four times per week. Doe said that Villalobos would force him into the bed. Doe said that Villalobos had last penetrated his anus with his penis one week earlier. Villalobos had "just stopped" because that week Doe threatened to tell his therapist, whom Doe was seeing because he was suicidal. Doe said that Villalobos first sexually abused him two

4

years earlier when Doe was visiting Villalobos at Villalobos's house. Doe expressed concern about something happening to Villalobos because Doe's mother was not working and Villalobos helped pay the rent.

After the interview, officers took Doe to a hospital, where a forensic medical examination was conducted. Photographs of Doe's anus were taken as part of the examination. The photographs revealed that the entire surface of the anus appeared red and irritated and that some tissue had an "increased area of vascularity" or appeared "a little fuller."

A follow-up examination was conducted approximately two and one-half weeks later. Photographs of Doe's anus were taken at that examination too. No redness, irritation, or fullness of any tissue was depicted in the photographs taken at the follow-up examination. The photographs depicted "a normal exam."

Asked to assume that Doe had disclosed that he "had suffered from chronic continuous forced sodomy ending approximately a week or more" before the first examination, a forensic medical examination expert confirmed that the differences depicted in photographs of Doe's anus from the two examinations "could be consistent with" Doe's having been sexually abused.

The month after Doe reported the abuse, Denise Bowman conducted a second forensic interview of Doe. The additional interview was conducted because Doe had newly disclosed that Villalobos had used a gun. In the second interview, Doe told Bowman that when Villalobos sexually abused him, Villalobos would display a gun by

5

placing it on a desk. Villalobos would threaten to kill Doe and Doe's mother with the gun, and then he would anally penetrate Doe.

Bowman explained that for some child victims of sexual abuse, the child discloses details of the abuse piecemeal, so that the child can assess how the information is received. Disclosing additional information after an initial, more limited disclosure is common. Bowman explained that in addition most children do not disclose abuse "immediately." Bowman explained that there are many reasons why children delay disclosure, and she opined that delayed disclosure is common. If a perpetrator tells a child to keep abuse a secret, then that could affect a child victim's ability to disclose. Bowman explained how and why child victims of sexual abuse often provide inconsistent accounts of the abuse.

Villalobos testified on his own behalf. He denied ever having sexually abused Doe. Villalobos's brother, a nephew, and Mary's son testified on Villalobos's behalf.

The jury convicted Villalobos of two counts of aggravated sexual assault by means of forcible oral copulation with a child under 14 years old (§ 269, subd. (a)(4), counts 1 & 4) and one count of making criminal threats (§ 422, count 8). The jury also convicted Villalobos of five counts of attempted aggravated sexual assault by means of sexual penetration or sodomy with a child under 14 years old (§ 269, subd. (a)(3), (5), counts 2, 3, 5, 6, & 7.) The trial court sentenced Villalobos to an aggregate term in state prison of 46 years and two months to life.

DISCUSSION

A. *Jury Instruction on Child Sexual Abuse Accommodation Syndrome*

Villalobos argues that the trial court prejudicially erred by failing to instruct the jury on child sexual abuse accommodation syndrome in light of Bowman's testimony. We are not persuaded.

1. *Relevant Proceedings*

Defense counsel requested that the jury be instructed with CALCRIM No. 1193 concerning child sexual abuse accommodation syndrome. CALCRIM No. 1193 provides in relevant part: "You have heard testimony from [named expert] *regarding child sexual abuse accommodation syndrome.* [¶] Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. *Testimony as to the accommodation syndrome* is offered only to explain certain behavior of an alleged victim of child sexual abuse." (Italics added.)

The court and counsel initially discussed the jury instructions off the record. The court later addressed defense counsel's request for CALCRIM No. 1193 on the record. The court indicated that it was not inclined to give the instruction because the term child sexual abuse accommodation syndrome had never been introduced into evidence, so the instruction would probably confuse the jury.

With respect to an unspecified concern that defense counsel had expressed off the record concerning Bowman's testimony, the court stated that it believed "that the expert instruction covers that." The court told defense counsel: "If you don't think that it does,

7

you're certainly free to present a special instruction if you like and I'll consider it. If you don't think that—if your goal is to make sure that this jury is instructed that what [Bowman] said was—you know, doesn't mean [Villalobos] did anything, because all she's doing is reporting what she's being told from the person and then giving her background and experience, I think all of that is covered in the expert instruction. But if you feel it's not, please provide a special to me. But this particular one, [CALCRIM No.] 1193, I don't think is applicable given the way the evidence is presented." Defense counsel said that he would review "the testimony again to see if I need to or not." No special instruction was requested or given.

2. *Analysis*

A "court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence." (*People v. Moon* (2005) 37 Cal.4th 1, 30 (*Moon*); *People v. Bolden* (2002) 29 Cal.4th 515, 558 (*Bolden*).) We independently review claims of instructional error. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 336.)

Bowman did not testimony about child sexual abuse accommodation syndrome. No evidence was otherwise admitted about child sexual abuse accommodation syndrome. There consequently was not substantial evidence to support an instruction on the syndrome. The trial court accordingly did not err by failing to instruct the jury with

8

CALCRIM No. 1193. (*Moon*, *supra*, 37 Cal.4th at p. 30; *Bolden*, *supra*, 29 Cal.4th at p. 558.)

Villalobos argues that the jury nevertheless should have been instructed with CALCRIM No. 1193 because "Bowman addressed multiple components of the syndrome in her testimony, including delayed disclosure, secrecy, and unconvincing disclosure." The argument lacks merit. There is no evidence in the record that the concepts testified to by Bowman were related to child sexual abuse accommodation syndrome. Nothing in CALCRIM No. 1193 would inform the jury about how to assess Bowman's testimony about delayed discovery, secrecy, or unconvincing disclosure because the instruction does not mention any of those concepts. Rather, it addresses "child sexual abuse accommodation syndrome," (CALCRIM No. 1193) a term that was never used in Bowman's testimony.

For all of these reasons, we conclude that the trial court did not err by declining to instruct the jury with CALCRIM No. 1193.

B. *Amendment of Count 7*

Villalobos contends that after the prosecution concluded its case-in-chief the trial court granted his oral motion for acquittal on count 7 pursuant to section 1118.1, and the court therefore erred by replacing that count with a lesser related offense. Villalobos also argues that his counsel provided ineffective assistance by failing to object to the amendment. The People counter that the argument is meritless because the court did not grant the motion for acquittal. We agree with the People.

9

1. *Relevant Proceedings*

Count 7 of the information alleged that on or between January 21, 2017, through July 17, 2017, Villalobos committed aggravated sexual assault by means of sodomy with a child under 14 in violation of section 269, subdivision (a)(3) (section 269(a)(3)). After the prosecution rested, defense counsel moved under section 1118.1 for acquittal on count 7 because Doe was 14 years old during the alleged period. The prosecutor agreed that Doe was 14 years old during the alleged period and asked to proceed with an alleged violation of section 286(c)(2)(C) as a lesser included offense. Defense counsel submitted on the prosecutor's request, and the trial court granted the prosecutor's request.

The court asked the clerk if it would be easier for the clerk if the court dismissed count 7 as it was charged and add a count 9 "or just allow [the prosecutor] to modify it in the amended to reflect the [section] 286(c)(2)(C)?" The clerk responded, "We can amend it." The court asked the prosecutor and defense counsel if that was acceptable, and both agreed that it was.

The court clarified with the prosecutor that in section 286(c)(2)(C) the prosecutor was referring to "the language of any person that commits an act of sodomy with another person who is a minor 14 years of age or older when that act is accomplished against the victim's will by means of force, duress, menace, or fear of immediate unlawful bodily injury on the victim or another person." The prosecutor confirmed that the court had identified the correct section. The court explained that it did not believe it needed to tell the jury that the count was being modified or instruct them about the modification

10

because "they haven't memorized what the counts or charges are, and we're not adding a count. It's just being amended to a lesser charge due to the age as testified to by the minor." The parties agreed.

The minute order reflecting that day's proceedings states that the court entertained argument on Villalobos's oral motion to dismiss under section 1118.1 and that "Oral motion by People re Amend Count 7 is called for hearing. [¶] Motion/Petition granted. [¶] Court amends Count 07 to a violation of [section 286(c)(2)(C)]. [¶] [Section] 1118.1 Penal Code motion made by defense counsel is Denied."

Count 7 was amended to allege that on or between January 21, 2017, through July 17, 2017, Villalobos committed sodomy by force on a minor 14 years old or older in violation of section 286(c)(2)(C).

After both sides rested, the court addressed the need to arraign Villalobos on the amended information as to count 7. The court stated: "So there was a discussion about Count 7. And defense had made [a section] 1118.1. People had submitted. It had been granted. People had asked leave to amend to change Count 7 to the sodomy of a child over 14 but under 18. That request was granted. And the clerk had asked [the prosecutor] to provide an Amended Information as to Count 7." Defense counsel acknowledged that he had received the amended information, waived a formal reading of it, stipulated to an advisement of constitutional rights, and entered a plea of not guilty.

The court asked counsel whether they had reviewed the newly added instruction to address the amended offense in count 7. Defense counsel responded: "Yes. And just to

11

clarify one thing, your Honor. I think there was some discussion about instead of amending Count 7, adding a Count 9. The reason why I'm bringing that up is—is when there's a [section] 1118.1 granted, they cannot refile those charges. But this wasn't a situation where that actually occurred. It was more amending according to proof and adding a different count. We had all agreed it would just be easier and simpler to just amend Count 7. The defense was in agreement with that." The court responded, "Okay. Thank you."

2. *Analysis*

Villalobos contends that defense counsel provided ineffective assistance of counsel by failing to object to the amendment of count 7 because the trial court had granted Villalobos's motion under section 1118.1 for acquittal on count 7 and thus could not amend count 7 to allege a violation of the lesser related offense under section 286(c)(2)(C). We do not agree with Villalobos's characterization of the record.

The record reflects that at the hearing on Villalobos's motion for acquittal the trial court granted the prosecution's motion to amend count 7 to conform to proof instead of granting Villalobos's motion for acquittal. The minute order from that hearing accurately states that the trial court denied Villalobos's motion for acquittal and granted the prosecution's motion to amend the count according to proof.[1]

---

[1]    In his opening brief, Villalobos also contends that the minute order from the hearing on the motion for acquittal indicates "that the entry of judgment of acquittal took place prior to the amendment to the pleading." In his reply brief, Villalobos concedes that the People "correctly note[] that the minutes do not contain an entry of judgment of acquittal as to count seven."

Villalobos's argument to the contrary is based on the trial court's misstatement at a later hearing, when the court summarized its prior ruling arraigning Villalobos on the amended information. At that hearing, the trial court did say it had previously granted Villalobos's section 1118.1 motion on count 7. Villalobos contends that the trial court's statement at the arraignment hearing created "some confusion" as to whether the acquittal motion had been granted. We do not agree. The record from the prior hearing reflects that the motion was not granted. Moreover, at the arraignment hearing, defense counsel cleared up any possible confusion. Defense counsel explained that the court had not granted the acquittal motion but instead had amended the count according to proof. Defense counsel's description of what happened at the prior hearing was accurate.

Villalobos's only claim of ineffective assistance is that defense counsel should have objected to the amendment of count 7 because the trial court granted the motion for acquittal on that count. Because the trial court did not grant that motion, we reject the ineffective assistance claim.

C. *Clerical Error*

At the sentencing hearing, the trial court found that Villalobos did not have the ability to pay, so the court struck all applicable fines and fees. The sentencing minute order and the abstract of judgment nevertheless reflect that the court imposed a $300 restitution fine (§ 1202.4, subd. (b)) and a suspended $300 parole revocation fine (§ 1202.45, subd. (c)).

13

"When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls." (*People v. Morales* (2014) 224 Cal.App.4th 1587, 1594.) We have the inherent authority to correct an abstract of judgment or a minute order that does not accurately reflect the oral judgment of the trial court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

The parties agree, and we concur, that the sentencing minute order and the abstract of judgment should be corrected to reflect that the court did not impose fines under section 1202.4 or section 1202.45. We remand to the trial court to correct the sentencing minute order and the abstract of judgment accordingly.

DISPOSITION

We direct the trial court to amend the sentencing minute order and the abstract of judgment to reflect that the court did not impose fines under section 1202.4 or section 1202.45 and to forward certified copies of the amended documents to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
             J.

We concur:

McKINSTER
    Acting P. J.
MILLER
     J.